IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PABLO AGUILAR, R58742, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 26-cv-541-DWD |
| WEXFORD HEALTHCARE, | ) | |
| NURSE PRACTITIONER JOINER, | ) | |
| CHRISTINE VINEYARD, | ) | |
| NURSE KELLY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Pablo Aguilar, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that he has been seeking care for hernias and severe groin pain since 2024, but his care has now stalled out and he is still in severe pain. He seeks preliminary injunctive relief for his severe pain. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009)*.

### THE COMPLAINT

Plaintiff alleges that he has been complaining since June of 2024 about severe lower abdominal and groin pain.  (Doc. 1 at 6).  He was given Tylenol, amoxycillin, and Mylanta, but none of these medications helped.  (*Id.*).  Plaintiff alleges that although Dr. Joiner did not completely ignore his situation, her use of the three medications could still constitute deliberate indifference because it was an easier and less effective course of treatment.  (*Id.* at 7).  Dr. Joiner acknowledged that she could see an MRI referral in the system, but she did not know why it had not occurred.  (*Id.* at 6).  Further, Plaintiff claims that he has informed Joiner, Christine Vineyard, and Nurse Kelly of his serious pain and need for ongoing care on numerous occasions, but they have not assisted him.  (*Id.* at 6, 9).

Plaintiff faults Wexford and Centurion for maintaining a policy or practice of denying or suspending prescription medications and other diagnostic or specialized treatments to cut costs and stay within the parameters of a budgeted bid with IDOC.  (Doc. 1 at 7).  He alleges in this situation the cost cutting policy led to the provision of an ultrasound, but not the prescribed MRI.  (*Id.*).  He also alleges that Wexford and Centurion have a policy of denying surgical procedures, which has impacted him because it was recommended that he have surgery for cysts on his testicles.  (*Id.* at 9).  Plaintiff also complains that Centralia does not have a full-time doctor, or a whole host of other

medical and dental staff.  (*Id.* at 8).  He claims the healthcare unit is 6-8 months behind. (*Id.*).

In support of the complaint, Plaintiff submitted copies of medical request slips addressed to Defendants Vineyard and Kelly in August of 2024 and February of 2025. (Doc. 1 at 10-14).  The request slips allege that Plaintiff had one hernia since 2006 for which treatment has been repeatedly denied, he now has a new hernia causing greater testicular pain, and he has marks on his left leg and testicle that concern him.  (Doc. 1 at 10).  Plaintiff indicates he was seen on July 1, 2024, did a urine test, received antibiotics, and was scheduled for an ultrasound, but as of late August the ultrasound had not yet been performed.  (*Id.*).  In the February 2025 request slip, Plaintiff alleged that orders were placed in November of 2024 for him to receive a CAT scan or MRI, but he had yet to be seen.  (*Id.* at 14).

Plaintiff seeks monetary compensation and injunctive relief.  (Doc. 1 at 15).  In the freestanding Motion for a Preliminary Injunction (Doc. 2), Plaintiff argues that he has been experiencing extreme pain in his lower abdominal and groin area for more than 18 months.  He alleges he was to be sent for an MRI, but this has yet to happen, and he has not been seen by anyone to assess and treat his pain.  (Doc. 2-1 at 1).  He alleges that his pain is debilitating, making it difficult for him to exercise or even walk to the chow hall. (Doc. 2-1 at 2).  He argues that without immediate relief he will languish unnecessarily in pain, that mandating the defendants to assess him and provide care is just requiring them to meet their constitutional duty to render adequate care, and the burden on defendants to comply would be minimal.  (Doc. 2-1 at 2-4).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Joiner, Vineyard, and Nurse Kelly for their role in allegedly failing to diagnose or treat Plaintiff's severe lower abdominal and groin pain and cysts from June 2024 to present;**

**Claim 3:** ***Monell* claim against Wexford for maintaining a policy or practice of cutting costs by delaying expensive diagnostic tests or specialist consultations.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSAL

Plaintiff mentions Centurion throughout his pleadings, but he did not formally name Centurion as a defendant in the case caption.  Federal Rule of Civil Procedure 10(a) requires that the case caption of the complaint list the names of all defendants.  Because Centurion was not properly listed, any allegations against them are dismissed without prejudice as improperly pled.

ANALYSIS

**Claim 1**

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff alleges that he has seen Defendant Joiner and has informed her that he has ongoing serious pain in his lower abdomen and groin, but she has not provided timely care or care that alleviates his pain. He specifically alleges she knew there was an order for him to receive an MRI that had languished, but he does not believe she did anything about it. As for Defendants Vineyard and Nurse Kelly, he alleges he has written them numerous detailed requests about his need for care, but they have not assisted him. In support of the complaint, he submitted two highly detailed request slips addressed to these defendants seeking care and describing his ongoing plight. At this early juncture, the Court finds that Plaintiff has sufficiently identified a serious medical condition — two

hernias, severe abdominal and testicular pain, and testicular cysts—and he has alleged that for 18 months or more he has received inadequate care to determine the precise cause of his pain or to alleviate his pain.  He also plausibly alleges that the Defendants know of his situation and have failed to act.  Claim 1 may proceed as pled against Joiner, Vineyard, and Nurse Kelly.

**Claim 2**

Plaintiff also alleges that he has been harmed by Wexford's policy or practice to cut costs by denying advanced diagnostics like MRI imaging and specialist visits.  He alleges that after he received an ultrasound (a cheaper and less effective option) he was supposed to be referred for an MRI, but he has not been seen again for well over a year. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also* *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).  In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735

(7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

At this preliminary juncture, Plaintiff's allegations against Wexford about cost-cutting and his lengthy wait for an MRI are sufficient to proceed. Ultimately, Plaintiff will need significantly more evidence to demonstrate that this policy or practice exists, it is widespread, and it directly caused his harm, but at the pleading stage reading the complaint broadly in his favor he may proceed.

## MOTION FOR A PRELIMINARY INJUNCTION

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success— in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020); *Doe v. University of Southern Indiana*, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor when considering preliminary injunctive relief).

The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g., Tatum v. Hunter*, Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

At this early juncture, Plaintiff alleges that he has languished in serious pain, that his pain is debilitating, and that he has not received adequate diagnostic testing or treatment to mitigate his situation.  He alleges that although he initially received an ultrasound, the follow-up MRI has not been performed, and he has not been seen for more than a year at this point.  Without further information, the Court is unable to yet accurately assess the potential merits of Plaintiff's claim.  The individual defendants (Joiner, Vineyard, and Nurse Kelly) who allegedly have received and should field his queries about care will be directed to respond to Plaintiff's Motion via the Warden of Centralia.  To this end, the Court will add the Warden as a party in official capacity only and it will serve the Warden.  The Warden shall have 21 days from the date he/she returns an executed waiver of service to respond to Plaintiff's Motion for a Preliminary Injunction.  (Doc. 2).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel wherein he indicates he is a Spanish speaker and cannot speak, read, or write English very well.  (Doc. 4 at 2).  When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself

"is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff did not provide any proof that he attempted to secure his own counsel yet, so his Motion must be denied. If Plaintiff reapplies, he must include proof he attempted to contact at least 3 attorneys to seek his own representation.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** survives against Defendants Joiner, Christine Vineyard, and Nurse Kelly and **Claim 2** survives against Wexford Healthcare. By contrast, Plaintiff did not adequately name Centurion as a defendant, so Centurion is dismissed without prejudice.

The Clerk of Court shall **ADD** the Warden of Centralia in official capacity only to respond to Plaintiff's Motion for a Preliminary Injunction. (Doc. 2). **The Warden shall have 21 days from the return of an executed wavier of service to file a response to the Motion.**

Plaintiff's Motion for Recruitment of Counsel (Doc. 4) is **DENIED**, and his Motion for Service of Process at Government Expense (Doc. 5) is **DENIED as MOOT**.

The Clerk of Court is **DIRECTED** to prepare for Defendants Joiner, Christine Vineyard, Nurse Kelly, and the Warden of Centralia (official capacity for the preliminary injunction): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), the Motion for a Preliminary Injunction (Doc. 2) and this Memorandum and Order to Defendants' place of employment as identified by

Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later

than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: April 30, 2026

/s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.